SCHWEPPES U.S.A. LIMITED, *a corporation*

*v.*

MARVIN R. KIGER, *Judge, etc., et al.*

*and* GLENNA CATHER, *et al.*

(No. 13555)

Decided May 20, 1975.

*Robert T. Donley, Hale J. Posten, Albert M. Morgan, William H. Higinbotham* for relator.

*Wilson, Frame & Rowe, Clark B. Frame* for respondents Cather.

CAPLAN, JUSTICE:

In this original proceeding in prohibition the petitioner, Schweppes U.S.A. Limited, a corporation, seeks to prohibit the respondents, Marvin R. Kiger, Judge of the Circuit Court of Monongalia County; Jean Friend, Clerk of the Circuit Court of said county; Charles J. Whiston, Sheriff of said county; and, Glenna Cather and Carl Cather, her husband, from further proceeding in an action instituted in the above court, designated Glenna Cather and Carl Cather v. Schweppes U.S.A. Limited, or from any attempt to enforce the alleged void judgment rendered therein. This Court on January 27, 1975 awarded a rule returnable February 11, 1975. Subsequently, the case was continued to April 22, 1975 for the taking of depositions upon which date, upon the briefs and oral arguments of counsel for the respective parties, the case was submitted for decision.

Giving rise to this proceeding is the factual situation revealed by the record and now described. Respondents Glenna and Carl Cather, residents of Morgantown, West

Virginia, while driving from said city to the eastern sea-shore for a holiday stopped in Easton, Maryland where they stayed overnight. While there they purchased from a retail store four quarts of Schweppes tonic water. The following morning, May 25, 1974, they proceeded by automobile and boat to Hog Island, Virginia, their desti-nation, taking with them the said bottles of tonic water. The Cathers were in the company of two other couples from Morgantown.

Upon their arrival at Hog Island, Glenna Cather was unpacking their personal effects during which time she had occasion to handle one of the bottles of tonic water. As she placed it on the floor the metal cap on the bottle blew off with great force. The cap struck Mrs. Cather in the right eye causing severe and perhaps irreparable damage. She was hospitalized and continues to suffer serious consequences from that unfortunate accident. While we in no manner minimize the extent of her inju-ries, further consideration of her condition resulting therefrom is not pertinent to this proceeding.

Subsequently, on the 7th day of August, 1974 Glenna and Carl Cather instituted an action against Schweppes U.S.A. Limited in the Circuit Court of Monongalia Coun-ty, West Virginia, charging Schweppes, the petitioner herein, with a breach of implied warranty and negli-gence and seeking damages in the sum of $750,000.00 for the injury to Mrs. Cather's right eye. For the purpose of obtaining service on Schweppes the plaintiffs served process on the Auditor of the State of West Virginia, ostensibly under the provisions of *Code*, 1931, 31-1-71, as amended. Schweppes, for reasons disputed in this rec-ord, did not answer or otherwise defend against the com-plaint of the Cathers. By reason thereof the plaintiffs in that action filed a motion for a default judgment under the provisions of 55(b)(2), West Virginia Rules of Civil Procedure. Their motion for such judgment was granted.

Thereafter, on September 13, 1974 the plaintiffs re-quested and were granted a hearing on the question of

damages. This hearing was held before the court, a jury having been expressly waived. At the hearing there was adduced the testimony of the plaintiffs, two medical witnesses and a professor of business administration from West Virginia University who testified as an actuarial expert. At the conclusion of the hearing, judgment was entered against Schweppes in the amount of $270,000.00 in favor of Glenna Cather and $30,000.00 for the plaintiff's husband, Carl Cather.

The sole issue in this proceeding is whether the Circuit Court of Monongalia County had jurisdiction of Schweppes U.S.A. Limited so as to render an *in personam* judgment against it for the above-described injuries of Glenna Cather. Did the Circuit Court of Monongalia County acquire jurisdiction over Schweppes by virtue of service upon and acceptance of service by the Auditor of the State of West Virginia of process issued in that action wherein the defendant was considered a corporation not authorized to do business in the State of West Virginia under the provisions of *Code*, 1931, 31-1-71, as amended?

It is a fundamental principle of law that a court, to render a valid judgment or decree, must have jurisdiction both of the parties and of the subject matter and that any judgment or decree rendered without such jurisdiction will be utterly void. *State ex rel. Smith v. Bosworth*, 145 W. Va. 753, 117 S.E. 2d 610 (1960); *Chapman v. Maitland*, 22 W. Va. 329 (1883); 11 M.J. *Jurisdiction* § 8 *et seq.*

The respondents take the position that if the petitioner, a foreign corporation, was doing business in this state service was effected upon it under the provisions of *Code*, 1931, 31-1-71, as amended, sometimes referred to as our long-arm statute. They contend that the above statute was an attempt by the legislature to enable injured West Virginia residents to sue a foreign corporation in the courts of our state rather than having to proceed against such corporation in its home state. We agree that the legislature in its endeavor to lessen the

burden of a resident injured in this state by an act of a foreign corporation provided a method of obtaining personal service on such corporation, making it amenable to the jurisdiction of our courts so that in an action instituted against it an *in personam* judgment could be rendered. However, jurisdiction of such foreign corporation can be obtained only as prescribed by the above statute.

*Code*, 1931, 31-1-71, as amended, constitutes the state auditor as attorney in fact for the acceptance of service of process for all domestic corporations and for all foreign corporations authorized to do business in this state. A further function of said statute is to provide a method to service process on foreign corporations which do business in this state without having been authorized so to do pursuant to *Code*, 1931, 31-1-79, as amended.

Where pertinent, *Code*, 1931, 31-1-71, as amended, reads as follows:

> Any foreign corporation which shall do any business in this State without having been authorized so to do pursuant to the provisions of section seventy-nine [§31-1-79] of this article shall be conclusively presumed to have appointed the auditor of the State as its attorney in fact with authority to accept service of notice and process may be made in this State for and upon every such corporation *in any action or proceeding described in the next following paragraph of this section. * * *

> For the purposes of this section, a foreign corporation not authorized to do business in this State pursuant to the provisions of section seventy-nine [§31-1-79] of this article shall nevertheless be deemed to be doing business herein (a)if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, (b)if such corporation commits a tort in whole or in part in this State, or, (c)if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition and such product causes injury to any person or property within this State notwithstanding the fact that such corporation had no agents, ser-

vants or employees or contacts within this State at the time of said injury. *The making of such contract*, the committing of such tort or the manufacture or sale, offer of sale or supply of such defective product as herein-above described shall be deemed to be the agreement of such corporation that any notice or process served upon, or accepted by, the auditor pursuant to the next preceding paragraph of this section in any action or proceeding against such corporation arising from, or growing out of, such contract, tort, or manufacture or sale, offer of sale or supply of such defective product shall be of the same legal force and validity as process duly served on such corporation in this State.

Although the foregoing code provisions prescribe the manner in which a foreign corporation not authorized to do business in this state can be served with process, even though no officer or agent thereof can be found, such service is not without limitation. The second and third paragraphs, quoted in part above, are interdependent and together provide the whole cloth of authority to serve process upon and obtain jurisdiction of a foreign corporation not authorized to do business in this state. The second paragraph provides that such corporation shall be presumed to have appointed the auditor as its agent to accept service of notice and process "in any action or proceeding described in the next following paragraph of this section."

The third or "next following" paragraph subjects an unauthorized foreign corporation to the jurisdiction of our courts by providing permissible or lawful service of process only in the three types of actions or proceedings noted therein. These are (a) if such corporation makes a contract to be performed in whole or in part, by any party thereto, "in this State"; (b) if such corporation commits a tort in whole or in part "in this State"; or, (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition which causes injury to any person or property "within this State." Thus, this statute does not confer upon the state

auditor general or unlimited authority to accept service upon every foreign corporation not authorized to do business in this state but makes such service permissible only in the stated instances.

In order to make a corporation amenable to the jurisdiction of our courts, service of process must be made upon its officers or designated agents through whom it is capable of acting. This may be accomplished by personally serving, in this state, such officers or agents; or it may be done under a statute providing that service may be made upon and accepted by some state officer such as the auditor or secretary of state. The latter method is frequently used in serving non-resident corporations and is the method embodied in *Code*, 1931, 31-1-71, as amended. "The general principle that where a particular method of serving process is prescribed by statute that method must be followed is especially exacting in reference to the service of process on a corporation defendant. A strict compliance with the statute is necessary to confer jurisdiction of the court over a corporation." 19 Am. Jur. 2d *Corporations* Section 1462. *See, Amy v. Watertown*, 130 U.S. 301 (1889); *Biaett v. Phoenix Title & Trust Co.*, 70 Ariz. 164, 217 P.2d 923 (1950); and, *Reader v. District Court*, 98 Utah 1, 94 P.2d 858 (1939).

In the instant case the purchase of the tonic water was made in Maryland, not in this state; the injury occurred and the tort was committed in Virginia, not in this state; and, the product caused the injury to the plaintiff in Virginia, not within this state. Clearly, the factual situation as revealed by the record does not permit service of process under the plain and unambiguous provisions of *Code*, 1931, 31-1-71, as amended. Nothing about which complaint is made occurred in the State of West Virginia and no statutory authority exists for serving process on Schweppes under *Code*, 1931, 31-1-71, as amended. No other manner of service of process is provided by our statutes in these circumstances. The state auditor simply cannot accept service in this case so as to confer jurisdiction upon the Circuit Court of Monongalia County.

It is the position of the respondent that Schweppes had sufficient contacts with this state to satisfy the requirements of jurisdictional due process; that an action against it in this state would not offend traditional notions of fair play and substantial justice, as discussed in *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945); and that by reason thereof the Circuit Court of Monongalia County acquired jurisdiction of said foreign corporation by the service of process upon and acceptance thereof by the state auditor.

Whether or not Schweppes had sufficient minimum contacts in this state to satisfy the aforesaid due process requirements is not material to the decision of this case. Even if there were sufficient minimum contacts to hold that Schweppes was doing business in this state, which we do not determine here, no method of service of process is provided. As noted above, the state has exercised its powers through *Code*, 1931, 31-1-71, as amended, to permit service on a non-resident corporation not authorized to do business only in the cases specified in that statute. Schweppes committed no act in this state which would subject it to service of process under said code provision. This position of the respondent is without merit.

The respondent further contends that there is a clearly discernible trend toward the expansion of the permissible scope of jurisdiction over foreign corporations. Many cases are cited in support thereof. While this contention is valid and the cases so reflect, neither is apposite here. In each of those cases the injury occurred, the contract was entered into or was to be performed, or the product complained of caused injury in the state of the forum. These cases are clearly distinguishable.

For the reasons stated herein the Circuit Court of Monongalia County did not acquire jurisdiction of Schweppes and the writ of prohibition is awarded as prayed for in the petition.

*Writ awarded.*