539 S.E.2d 106 (2000)
STATE of West Virginia ex rel. the BARDEN AND ROBESON CORPORATION, a New York corporation; and Bob Hutton and Gene Hutton, d/b/a Buildings, Inc., Petitioners,
v.
The Honorable George W. HILL, Jr., Judge of the Circuit Court of Wood County; and Fellowship Baptist Church, By and Through Its Trustees, Glen Gainer, III, Clayton Bond and Kermit Polan, Respondents.
No. 26837.
Supreme Court of Appeals of West Virginia.
Submitted January 11, 2000.
Decided July 12, 2000.
*107 John F. Loehr, Esq., Shawn R. Romano, Esq., Daniels Law Firm, PLLC, Charleston, West Virginia, Attorneys for Petitioners.
*108 Robert L. Bays, Esq., C. Edward McDonough, Esq., Bowles Rice McDavid Graff & Love PLLC, Parkersburg, West Virginia, Attorneys for Respondent Fellowship Baptist Church.
McGRAW, Justice:
In this original jurisdiction proceeding, petitioners seek a writ of prohibition requiring the Circuit Court of Wood County to vacate a default-judgment order entered in a breach-of-contract action brought against them by respondent Fellowship Baptist Church ("Church"). Petitioners assert that the lower court lacked subject-matter jurisdiction over the underlying suit due to the existence of an arbitration provision in a contract between the Church and petitioner Barden and Robeson Corporation ("Barden"). We reject petitioners' request for prohibition relief, finding that an agreement to arbitrate a dispute does not divest a court of subject matter jurisdiction.

I.

BACKGROUND
The pertinent facts of this case, as stated in the pleadings before us, are straightforward. Petitioners were involved in designing and constructing an addition to the Church's building in Vienna, West Virginia. After the work was completed, the Church asserted that the height of the ceiling in the basement of the addition was lower than what was agreed to. Specifically, it has maintained that it specified the ceiling height at nine feet, and that while early plans provided by Barden indicated such height, the ceiling was subsequently lowered to seven feet, eight inches without the Church being given adequate notice of such change.
The work was performed pursuant to two contracts: one between the Church and petitioners Bob and Gene Hutton, doing business as Ray Builders, Inc.; and another between the Church and Barden. The latter contract, dated July 30, 1998, contains the following arbitration clause:
Any dispute arising out of this Agreement will be submitted to arbitration in accordance with the Rules of the American Arbitration Association. The Purchaser shall be responsible for all attorneys fees incurred as a result of the failure to make timely payments to The Barden & Robeson Corporation, including legal expenses of Arbitration. The non-prevailing party shall pay all costs attended to as a result of Arbitration.
The Church maintains, inter alia, that there was no agreement to arbitrate due to the fact that the trustees of the Church executed a facsimile copy of the contract, wherein the small print of the arbitration clause was "virtually unreadable as a faxed document."
Following unsuccessful efforts at negotiating a settlement to the dispute,[1] the Church brought an action against petitioners in the Circuit Court of Wood County. There is apparently no dispute that petitioners were served with the complaint on April 7, 1999. After petitioners failed to respond to the complaint, the Church moved for, and on June 1, 1999 was granted, a default judgment pursuant to W. Va. R. Civ. P. 55. Petitioners subsequently moved to set aside the default judgment under Rules 55(c) and 60(b) of the West Virginia Rules of Civil Procedure. In their motion, petitioners relied upon the criteria set forth in syllabus point three of Parsons v. Consolidated Gas Supply Corp., 163 W.Va. 464, 256 S.E.2d 758 (1979), and asserted they should be relieved from judgment because (1) the delay in answering the complaint resulted from excusable neglect in that Barden was required to engage in the time-consuming task of retaining local counsel; and (2) the circuit court lacked subject matter jurisdiction over the action as a result of the purported agreement to arbitrate.[2] *109 According to petitioners, the circuit court, at a hearing conducted on July 16, 1999, indicated its intention to deny this motion. It is unclear as to whether an order giving effect to such ruling has ever been entered by the court below.

II.

STANDARD FOR PROHIBITION RELIEF
In accord with the provisions of W. Va.Code § 53-1-1 (1923), "`[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.' Syl. pt. 1, Crawford v. Taylor, 138 W.Va. 207, 75 S.E.2d 370 (1953)." Syl. pt. 2, Cowie v. Roberts, 173 W.Va. 64, 312 S.E.2d 35 (1984). Although petitioners in this case may have other avenues for challenging the jurisdiction of the circuit court, this Court has previously indicated that "where it appears that a court is proceeding without jurisdiction ... prohibition will issue regardless of the existence of other remedies." State ex rel. West Virginia Truck Stops, Inc. v. McHugh, 160 W.Va. 294, 302, 233 S.E.2d 729, 734 (1977). See also Health Management, Inc. v. Lindell, 207 W.Va. 68, 528 S.E.2d 762, 767 n. 6 (1999); State ex rel. City of Huntington v. Lombardo, 149 W.Va. 671, 679, 143 S.E.2d 535, 541 (1965); syl. pt. 1, Lake O'Woods Club v. Wilhelm, 126 W.Va. 447, 28 S.E.2d 915 (1944).
Importantly, "[a] writ of prohibition does not lie in the absence of a clear showing that a trial court is without jurisdiction to hear and determine a proceeding...." Syl. pt. 1, in part, Fahey v. Brennan, 136 W.Va. 666, 68 S.E.2d 1 (1951). See also Fisher v. Bouchelle, 134 W.Va. 333, 335, 61 S.E.2d 305, 306 (1950) ("the writ will not be awarded in cases where it does not clearly appear that the petitioner is entitled thereto"); syllabus, Vineyard v. O'Brien, 100 W.Va. 163, 130 S.E. 111 (1925) ("The writ of prohibition will issue only in clear cases, where the inferior tribunal is proceeding without, or in excess of, jurisdiction.") Thus, we undertake limited review in this case to determine whether the circuit court's action in entering default judgment against petitioners was distinctly outside of its jurisdiction.

III.

DISCUSSION
We begin our analysis in this case with the fundamental premise that for "a court to hear and determine an action, suit or other proceeding it must have jurisdiction of the subject matter and jurisdiction of the parties; both are necessary and the absence of either is fatal to its jurisdiction." Syl. pt. 3, State ex rel. Smith v. Bosworth, 145 W.Va. 753, 117 S.E.2d 610 (1960). See also syl. pt. 1, McClay v. Mid-Atlantic Country Magazine, 190 W.Va. 42, 435 S.E.2d 180 (1993); syl. pt. 1, Schweppes U.S.A. Ltd. v. Kiger, 158 W.Va. 794, 214 S.E.2d 867 (1975) ("In order to render a valid judgment or decree, a court must have jurisdiction both of the parties and of the subject matter and any judgment or decree rendered without such jurisdiction will be utterly void."). In this case, our focus is solely upon whether the default judgment entered by the circuit court must be vacated for want of subject matter jurisdiction, based upon the alleged existence of a binding and enforceable agreement to arbitrate.[3]
*110 In syllabus point one of Board of Educ. of Berkeley County v. W. Harley Miller, Inc., 160 W.Va. 473, 236 S.E.2d 439 (1977) [hereafter "Miller II"], we held, in pertinent part, that "[w]here parties to a contract agree to arbitrate ... all disputes... arising under the contract, and where the parties bargained for the arbitration provision, such provision is binding, and specifically enforceable." This Court's past cases have recognized that a contract provision requiring arbitration of disputes "creates a condition precedent to any right of action or suit arising under the contract." Syl. pt. 3, in part, Pettus v. Olga Coal Co., 137 W.Va. 492, 72 S.E.2d 881 (1952). See also State ex rel. Center Designs, Inc. v. Henning, 201 W.Va. 42, 45, 491 S.E.2d 42, 45 (1997) (per curiam) ("the parties to a contract may agree that a decision of arbitrators or a third person is a condition precedent to the right to bring an action upon the contract"). As a condition precedent to litigating a dispute in the courts, a valid and enforceable arbitration clause "preclud[es] any right of action until the procedure has been completed." Board of Educ. of Berkeley County v. W. Harley Miller, Inc., 159 W.Va. 120, 126, 221 S.E.2d 882, 885 (1975) [hereafter "Miller I"].
This more recent view of arbitration as condition precedent to litigation has its roots in cases that did, in fact, speak of arbitration in jurisdictional terms. At common law, an agreement to arbitrate could be revoked prior to an award being made. See Miller I, 159 W.Va. at 122, 221 S.E.2d at 883. This rule was predicated on the antiquated notion that arbitration agreements are unenforceable because parties cannot, by agreement, oust a court of jurisdiction.[4] The only exception was that arbitration was not revocable where it was made a condition precedent to a right of action. In Condon v. South Side R.R. Co., 55 Va. (14 Grat.) 302 (1858), the Court explained that
parties by their contract may lawfully make the decision of arbitrators or of any third person a condition precedent to a right of action upon the contract. In that case such decision is a part of the cause of action. Until the decision is made and the cause of action thus becomes complete, the courts have no jurisdiction of the case, and therefore cannot be said to be ousted of their jurisdiction by the contract.
Id. at 314 (emphasis added). In Miller I, however, we indicated that this common-law preoccupation with "prevent[ing] parties by agreement from ousting courts of jurisdiction, is frankly archaic." 159 W.Va. at 126, 221 S.E.2d at 885. In truth, the jurisdictional concepts once employed in the arbitration context were nothing more than "an illogical remnant of ancient English law." DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 76 (1st Cir.2000) (citation omitted).[5] Thus, we reject the jurisdictional bent of these older cases.
The focus of our more modern cases has been upon permitting, where appropriate, the enforceability of private agreements to arbitrate according to their terms. An arbitration agreement is nothing more than a contractual arrangement for resolving disputes *111 by means other than court-supervised litigation. As is now widely recognized, such
agreements ... are not destructive of jurisdiction. They are, precisely, agreements, and as such may be pleaded as a personal defense. However, like any such right, they may be waived.... Plaintiffs' ... [assertions], to the effect that the court has no "jurisdiction" until agreed-on arbitration has been conducted, do not concern jurisdiction in the basic sense, but stand merely for the proposition that if either party seasonably claims his right to arbitrate, the agreement must be recognized.
Morales Rivera v. Sea Land of Puerto Rico, Inc., 418 F.2d 725, 727 (1st Cir.1969) (citations omitted). See also Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727, 733 (1st Cir.1994) ("[A]n agreement to arbitrate does not deprive a federal court of its jurisdiction over the underlying dispute."), aff'd, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); Cranston Teachers Ass'n v. Cranston School Comm., 120 R.I. 105, 109, 386 A.2d 176, 178 (1978) (arbitration agreement does not implicate a court's "power to adjudicate a dispute," but merely "raises the distinct question whether the court should have exercised that power"); John Ashe Assoc., Inc. v. Envirogenics Co., 425 F.Supp. 238, 241 n. 3 (E.D.Pa.1977) ("The arbitration agreement [merely] limits the scope of the court's review, not its subject matter jurisdiction.").
Again, the right to arbitration is purely a matter of contract. Thus, "arbitration agreements are [as much] enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12, 87 S.Ct. 1801, 1806 n. 12, 18 L.Ed.2d 1270, 1277 n. 12 (1967). As with any contract right, an arbitration requirement may be waived through the conduct of the parties. See Earl T. Browder, Inc. v. County Court of Webster County, 143 W.Va. 406, 412, 102 S.E.2d 425, 430 (1958) (holding that defendant's neglect or refusal to arbitrate dispute constituted waiver of right to require arbitration); Pettus, 137 W.Va. at 500, 72 S.E.2d at 885 (binding arbitration provision requires that "`suit cannot be brought until the award is made, unless... performance is excused by waiver or for other good cause'") (citation omitted). We have stated categorically that "[s]ubject matter jurisdiction may never be waived." Dishman v. Jarrell, 165 W.Va. 709, 712, 271 S.E.2d 348, 350 (1980) (citing West Virginia Secondary School Activities Comm'n v. Wagner, 143 W.Va. 508, 102 S.E.2d 901 (1958)). Obviously, this Court's treatment of arbitration as a condition precedent otherwise subject to waiver or estoppel is wholly inconsistent with it being a jurisdictional prerequisite, since the satisfaction of a jurisdictional requirement cannot be waived and may be joined in issue by the parties or raised by the court at any time during judicial proceedings.
In this case, unless it is able to show good cause for its default, Robeson has waived its right to assert arbitration as an affirmative defense against continued litigation in the circuit court. As an affirmative defense, arbitration must be asserted in the answer or it may, under appropriate circumstances, be deemed waived pursuant to W. Va. R. Civ. P. 8(c).[6]See American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 96 (4th Cir.1996) (affirmative *112 defense of arbitration must be pled in answer); McDonnell v. Dean Witter Reynolds, Inc., 620 F.Supp. 152, 155-56 (D.Conn.1985) ("the affirmative defense of arbitration must appear in the answer, and `a party's failure to plead an affirmative defense bars its invocation at later stages of the litigation.'") (citation omitted). Moreover, in denying the performance of arbitration as a condition precedent, the proponent of arbitration must make such an allegation "specifically and with particularity." W. Va. R. Civ. P. 9(c). Unexcused conduct that results in the entry of a default judgment is no less of an implicit waiver of a right to arbitration than any other procedural forfeiture.
Consequently, we hold that the mere existence of a contractual agreement among litigants to arbitrate a dispute does not deprive a circuit court of subject matter jurisdiction so as to prevent the entry of a default judgment.[7] Even where arbitration rights are timely asserted and judicial proceedings are stayed pending the outcome of the arbitration, a circuit court still retains jurisdiction over the matter such that any resulting award may be judicially enforced. See Miller II, 160 W.Va. at 496, 236 S.E.2d at 452 (Miller, J., concurring). We therefore find no merit in petitioners' argument that the circuit court lacked jurisdiction to enter a default judgment against them.

IV.

CONCLUSION
For the reasons stated, the requested writ of prohibition is denied.
Writ denied.
NOTES
[1] Prior to suit being filed, Barden informed counsel for the Church, by correspondence dated February 10, 1999, as to the existence of the purported arbitration agreement.
[2] The arguments submitted to this Court, as well as those tendered to the circuit court, make no distinctions between the various petitioners. Upon what theory petitioners Bob and Gene Hutton base their attempt to benefit from the provisions of Barden's contract with the Church, as well as Barden's purported excuse for not timely answering the complaint, is not clear. However, this is a question that the Court need not struggle with given the result we reach in this case.
[3] In Eastern Associated Coal Corp. v. Doe, 159 W.Va. 200, 210, 220 S.E.2d 672, 679 (1975), we established the threshold standard by which a court may exercise initial jurisdiction over an action:

[T]he requirement of subject matter jurisdiction is met initially if: 1) the court has the general power to grant the type of relief demanded under any circumstances; 2) the pleadings demonstrate that a set of facts may exist which could arguably invoke the court's jurisdiction; and 3) the allegations both with regard to the facts and the applicable law are of sufficient substance to require the court to make, in an adversary proceeding, a reasoned determination of its own jurisdiction.
Barden's arguments are confined to asserting that the circuit court lacked jurisdiction in light of the arbitration provision in its contract with the Church. Consequently, our analysis is limited to this claimed defect.
[4] In Riley v. Jarvis, 43 W.Va. 43, 26 S.E. 366 (1896), the Court stated that

[t]he reason why the agreement was revocable under common law was, not that arbitration was not favored by it as tending to end litigation, and not for want of consideration, as the ending of litigation was strong consideration, but because of that principle of law that parties could not, by agreement, oust the courts of their jurisdiction assigned them by law, and could not debar themselves from appealing to the law and tribunals of the land....
Id. at 48, 26 S.E. at 367.
[5] The Minnesota Supreme Court long ago recognized that

there appears never to have been any factual basis for holding that an agreement to arbitrate "ousted" jurisdiction. It has no effect upon the jurisdiction of any court. Arbitration simply removes a controversy from the arena of litigation. It is no more an ouster of judicial jurisdiction than is compromise and settlement or that peculiar offspring of legal ingenuity known as the covenant not to sue. Each disposes of issues without litigation. One no more than the other ousts the courts of jurisdiction. The right to a jury trial, even in a criminal case, may be waived. So, also, may the right to litigate be waived. Such waiver may be the result of contract or unilateral action.
Park Constr. Co. v. Independent Sch. Dist. No. 32, 209 Minn. 182, 186, 296 N.W. 475, 477 (1941).
[6] Rule 8(c) provides:

Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.
(Emphasis added.) Some courts have held that the enumerated requirement of pleading "arbitration and award" pertains exclusively to completed arbitration proceedings. See Lee v. Grandcor Med. Sys., Inc., 702 F.Supp. 252 (D.Colo.1988). However, Rule 8(c) is not exhaustive, and we discern that arbitration clearly falls under the catch-all provision of the rule as "any other matter constituting an avoidance or affirmative defense." Cf. Greene v. American Cast Iron Pipe Co., 871 F.Supp. 1427, 1431 (N.D.Ala.1994) (waiver question examined in light of catch-all provision of Fed.R.Civ.P. 8(c)).
[7] Our research has uncovered only two cases that deal directly with the question of whether a court has jurisdiction to enter a default judgment upon a contract containing an arbitration provision. In both of these unreported decisions, the courts found no merit in the argument that an agreement to arbitrate divests a court of the jurisdiction necessary to enter a default judgment. See Olde Discount Corp. v. RCK Corp., Inc., 110 F.3d 69, 1997 WL 133239, at *1 (9th Cir.1997) (unpublished) ("Because [defendant] failed to assert the arbitration issue in a timely fashion, we find no merit to his contention that the court should have set aside the default judgment.") (citation omitted); Cho Yang Shipping Co., Ltd. v. American Freight Lines, Ltd., No. 94 Civ. 0347, 1994 WL 577006, at *2 (S.D.N.Y. Oct. 19, 1994) ("[Plaintiff's] failure to initiate arbitration proceedings may have amounted to a breach of contract, in which case [defendant] had the option of asserting a counter-claim or moving to compel arbitration. [Defendant's] options did not include ignoring this action.").